SONES *v.* SOUTHERN LUMBER COMPANY, et al.

Oct. 13, 1952

No. 38486          3 Adv. S. 48          60 So. 2d 582

*Morse & Morse,* and *Grayson B. Keaton,* for appellant.

*Rae Bryant,* for appellees.

HALL, J.

Appellant suffered the loss of vision in his left eye while manipulating a binder in tightening a chain around a truck load of logs. He filed a claim under the Workmen's Compensation Act for this injury against Alvin Gipson, doing business under the name of Southern Lumber Company, and his insurance carrier, Bituminous Casualty Corporation. Upon a hearing of the matter the attorney-referee denied a recovery on the ground that appellant was not an employee of Gipson; this action was sustained by the Commission and on appeal to

the circuit court an order was entered affirming the same from which order this appeal is prosecuted.

In cases (Hn 1) where the finding of the Commission on a disputed question of fact is supported by substantial evidence we are not authorized to reverse its judgment. In this case, however, there is no dispute as to the facts and the matter for decision is one of law. Gipson owned and operated a sawmill in Pearl River County and, having in his employment more than eight persons, qualified under the Workmen's Compensation Act. About half of his supply of logs came from timber which he owned and the remainder came from purchases of logs from outside parties who brought them to the mill for sale. Gipson had one Walter Johnson in his employment as manager of a farm owned by Gipson and, in addition to the farm duties, Johnson was for some time employed as woods foreman in cutting and hauling logs to the mill from timber owned by Gipson. In doing this work Gipson furnished a truck for the hauling and also furnished a machine known as a "logger's dream" which was used in skidding the logs from the forest and in loading them upon the truck. He also furnished the other equipment used in the logging operations. A few months prior to appellant's injury Gipson entered into an oral contract with Johnson whereby Gipson furnished the above-mentioned equipment to Johnson, agreed to keep the same in repair, agreed to furnish all the gasoline and oil necessary for the operation thereof, and agreed to pay Johnson $13.00 per thousand feet for logs delivered at the mill. No notice of this change was posted at the mill or in any other manner given to the employees. The logs were to be cut from timber owned by Gipson, and Johnson was to employ and pay the men who assisted in cutting and hauling the logs. Johnson himself worked along with these men. Gipson testified that this oral contract did not cover any specific tract or amount of timber, did not expire at any fixed time, and that either he or Johnson had the right to termi-

nate the agreement at any time without notice. Gipson went upon the land from which the timber was to be cut and pointed out the lines. He also directed that the cutting be confined to those trees which measured nine inches and over in diameter at a point ten inches above the ground. All the logs therefrom were to be delivered to his mill. The question presented is whether under these facts appellant was an employee of Gipson or the employee of an independent contractor so as to relieve Gipson and his insurance carrier of liability for the injury.

Finding the answer to the question "Whose servant is this?" is often fraught with difficulty. The tests in arriving at the answer were fully laid down by this Court in the case of Kisner v. Jackson, 159 Miss. 424, 132 So. 90, from which we quote:

"There have been many attempts to define precisely what is meant by the term 'independent contractor'; but the variations in the wording of these attempts have resulted only in establishing the proposition that it is not possible within the limitations of language to lay down a concise definition that will furnish any universal formula, covering all cases. At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent. In our own more recent cases, it has been said that the important tests are whether the alleged 'independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished,' and that he is not a master who has no 'right to control the servant; and who is interested in the ultimate result of the work alone as a whole, but not in the details of the performance'; and that 'the main element required to constitute the relationship of master and servant is that the servant be subject to the control of the master in carrying on the business at the time of the injury.' Hutchinson-Moore Lbr. Co. v. Pitt-

man, 154 Miss. 1, 122 So. 191, 193; Caver v. Eggerton, 157 Miss. 88, 127 So. 727. But since these statements or definitions refer to the 'will of the employer' and to the 'control' by the master, we are returned again to the original proposition whether in a given case the alleged independent contractor is in fact independent, free of the will of his employer—actually and substantially free from his control.

''There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees, and to fix their compensation; and whether he is obliged to pay the wages of said employees. These are the tests, as we think, and any other, if differently stated, may be brought within one of those above briefly set out. 14 R. C. L., pp. 67-76; 31 C. J., pp. 473-475; 39 C. J., pp. 1316-1323.''

The Kisner case was followed in Natchez Coca-Cola Bottling Co. v. Watson, 160 Miss. 173, 133 So. 677; Benjamin v. Davidson-Gulfport Fertilizer Co., 169 Miss. 162,

152 So. 839; and Texas Co. v. Mills, 171 Miss. 231, 156 So. 866.

(Hn 2) Reverting to the tests mentioned by Judge Griffith in the Kisner case and applying them to the facts here presented we find that Gipson had the power to terminate Johnson's contract at will; Gipson furnished the means and appliances for the work; Gipson had control of the premises; Gipson furnished the materials upon which the work was done and received the entire output thereof and Johnson dealt with no other person in respect to the output; Gipson had the right to prescribe and furnish the details of the kind and character of work to be done; Gipson had the right to supervise and inspect the work during the course of the employment and to direct the details of the manner in which the work was to be done.

In Natchez Coca-Cola Bottling Co. v. Watson, supra, the Court emphasized the fact that the company furnished the truck and supplied it with gas and oil for use in a designated territory assigned to its alleged independent contractor in selling the company's products on a commission basis, and concluded that the driver of the truck was not an independent contractor but an employee of the company.

In Benjamin v. Davidson-Gulfport Fertilizer Co., supra, we held that where the company furnished all the tools, appliances, and equipment for doing the work, the servant, although engaged in unloading a car for a fixed price, was an employee and not an independent contractor.

In Texas Co. v. Mills, supra, the Court held that a bulk station agent was not an independent contractor but an employee of the company, notwithstanding the fact that he furnished his own truck in making deliveries of petroleum products, and, in so holding, attached much importance to the fact that the contract of employment was for an indefinite period of time and that the business in which the agent was engaged was not distinct

from that of the company but was one of the methods pursued by it in carrying on its own business.

The above authorities from our own Court dealt with the common law rule in negligence cases. The rule is even more liberal in compensation cases. In Larson's Workmen's Compensation Law, Vol. 1, Sec. 43.42, at pages 630-631, it is said: "The 'servant' concept at common law performed one main function: to delimit the scope of a master's vicarious tort liability. . . . By contrast, compensation law is concerned not with injuries *by* the employee in his detailed activities, but with injuries *to* him as a result not only of his own activities (controlled by the employer as to details) but of those co-employees, independent contractors and other third persons (some controlled by the employer, and others not). To this issue, the right of control of details of his work has no such direct relation as it has to the issue of vicarious tort liability. So, for example, . . . if I regularly, year in and year out, engage an individual trucker to transport logs from my woods to my lumber mill, which is an integral part of my lumbering operation, paying him by the load, and reserving no right of control over the details of his work, it is quite possible that this man is as appropriate a subject for compensation protection as any worker that could be found. He is taking a regular and continuous part in the manufacture of my product; his work is hazardous; his rate of pay is such that he and his family cannot be expected to bear the cost of industrial accident. In every respect he is the kind of worker for whose benefit the compensation act was thought necessary."

Let us turn now to some of the authorities from other jurisdictions which deal with compensation cases.

In the case of Bell v. Albert Hanson Lumber Co., Ltd., 151 La. 824, 92 So. 350, the Supreme Court of Louisiana quoted from several authorities and concluded: "In the case at bar the most salient feature is that the decedent was a mere swamp laborer earning his livelihood as one

of a gang of men constituting part of the logging outfit of the defendant company's mill. To characterize such a laborer as an independent contractor would be simply to ignore the realities of the situation. A significant circumstance is that for keeping the logging outfit running defendant was more or less dependent upon the men who were in the habit of doing this work, that the men themselves, while under no contractual obligation to report regularly for work, or to maintain regular hours for working, yet could not but realize that they were more or less expected to do so, as their doing so was necessary for the continuous operation of the logging outfit. Their keeping their jobs necessitated, doubtless, some dependability on their part. Defendant had absolute control of them in the manner of allowing them to go to work, and discontinuing their work.''

In Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99, the Supreme Court of Louisiana cited the Bell case with approval and said. ''The object of the statute is to shift the burden resulting from the accidents of our intense industrial activities from the employer to the general public. It is humane in its purpose, and its scope should be enlarged rather than restricted. Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them. Under the narrow and restricted construction sought to be placed upon the statute by defendant's counsel, every workman employed to do piece work in shop, factory, home, or elsewhere would be classed as an independent contractor, although he is not more free from the control and direction of his employer than the most ordinary day laborer. If this construction was to obtain, it would be only a matter of a short while before the law would become a legal curiosity or a mere memory instead of the wise, beneficial, active, remedial statute its reasonable interpretation and application can make it.''

We are impressed with the language of the Louisiana Court of Appeal in Robinson, et al. v. Younse Lumber

Co., et al., 8 La. App. 160, as follows: ''If those engaged in the sawmill business, which includes logging, were permitted to put an impecunious man in charge of the log cutters and base his compensation upon the amount of logs cut instead of paying him a salary and when sued for compensation plead that the man in charge was an independent contractor, the laborers in the woods would be entirely cut off and the purpose of the law would be thwarted. If courts should permit those engaged in industrial enterprises to escape liability in this way, the door would be left wide open to all kinds of subterfuge to escape liability and the act would be a dead letter in our books.''

A case quite similar on the facts to the one here presented is Liberty Lumber Co. v. Silas, 49 Ga. App. 262, 175 S. E. 265. There the company owned the timber to be cut and orally contracted with a party to cut and haul the logs to its mill at a stipulated price per thousand feet; the company furnished the equipment to be used in performing the contract, did not expressly specify anything as to the manner or method of its execution, and no time was fixed for its termination. The Georgia Court held that the man in charge of the logging was not an independent contractor and that an employee injured in the course of the work was entitled to the benefits of the Workmen's Compensation Law.

Numerous other authorities could be cited which follow the same trend as those above mentioned. The solution, after all, is found in a determination from the facts whether the alleged contractor is in truth and in fact independent. Where, as in this case, the mill owner furnishes the timber to be cut and the equipment to be used in the cutting, agrees to keep the equipment in repair and to furnish the fuel for its operation, and reserves the right to terminate the arrangement at will, the so-called contractor is not in fact independent. He is subject at all times to the will of the owner, is working

only by the grace of the owner, and his employees are within the protection of the compensation law.

The judgment of the lower court will be therefore reversed and judgment will be entered here in favor of appellant against the appellees and the cause remanded to the Commission solely for determination and supervision of the weekly payments to be made to appellant.

Reversed and judgment here.

*McGehee, C. J., Lee, Arrington* and *Ethridge, JJ.,* concur.