TRANUM *v.* MITCHELL ENGINEERING Co., et al.

No. 39492        February 21, 1955        78 So. 2d 111

*Boydstun & Boydstun,* Louisville, for appellant.

*W. J. Threadgill, John H. Holloman,* Columbus, for appellees.

KYLE, J.

This case is before us on appeal by J. D. Tranum, the claimant, from a judgment of the Circuit Court of Lowndes County affirming an order of the Workmen's Compensation Commission denying his claim against Mitchell Engineering Company and its insurance carrier for compensation benefits under the Mississippi Workmen's Compensation Act.

Tranum was injured on January 12, 1953, while engaged in painting a Quonset building for Mitchell Engineering Company in the City of Columbus, and filed his claim for compensation benefits as an employee of the company a few weeks later. The Mitchell Engineering Company and its insurance carrier denied liability on the ground that Tranum was not an employee of the company but an independent contractor. After hearing the testimony of the witnesses the attorney-referee found that Tranum was an employe eof the Mitchell Engineering Company and ordered the company and its insurance carrier to pay compensation benefits and medical expenses to the claimant. The full commission upon review set aside the order of the attorney-referee and denied the claim, and the circuit court affirmed the order of the commission.

The facts disclosed by the testimony of the witnesses were substantially as follows:

Tranum lived in the City of Louisville. He was a painter by trade. He owned his own painting equipment, including a trailer, gasoline engine with compressor, a paint pot, spraygun, hose, ladders and other appliances needed for carrying on his work as a painter. Tranum had done contract work for several years except for short periods of time, and had painted buildings for Mitchell Engineering Company during the last four or five years.

Mitchell Engineering Company was a construction company domiciled at Columbus, Mississippi, and engaged in the business of manufacturing and erecting

steel buildings. The company employed from 20 to thirty workmen; and in addition to its other activities the company manufactured and sold and erected Quonset buildings made of galvanized iron. C. L. Mitchell was the manager of the company's business operations.

A few days prior to January 12, 1953, Mitchell contacted Tranum about painting approximately 1000 units of steel which were to be used in a construction job for the Army. The contract price to be paid by Mitchell to Tranum for the painting of these steel units was 27 cents per unit. Tranum went to Columbus on January 12 for the purpose of painting the steel units. But, when he arrived at the plant, Mitchell told him that he had a Quonset building that he had completed for the Beneke Corporation, and that he had obligated himself in the sales contract to paint the building. Tranum agreed to paint the building that day, and while he was engaged in painting the building Tranum fell from the building and sustained a severe back injury. He was carried to a hospital at Louisville and remained there two days; and he was then taken to a hospital in the City of Jackson. He remained in the hospital at Jackson approximately 20 days. He was kept in a cast eight weeks, and after the cast was removed he was put in a brace. He was still wearing the brace at the time of the hearing before the attorney-referee, and the extent of his permanent disability had not been finally determined at that time.

Tranum testified that he had three employees working for him on the Beneke job. They were hired by him, and he paid them their wages. He told them what to do and supervised them while they were at work. Tranum furnished his own gasoline engine, compressor, hose, air gun and ladders. He had his own truck and trailer. Mitchell furnished the paint for the Quonset building, for the reason that a special kind of paint was required, and such paint could not be readily purchased on the

open market. After Tranum was injured his employees went back to the building and finished the job, and Mitchell paid Tranum $50 for the work.

Tranum had painted 15 or 20 Quonset buildings for Mitchell during the last four or five years. The pattern of agreement under which these jobs were handled was set when Tranum did his first work for Mitchell four or five years before the date of his injury. At that time Mitchell called Tranum on the telephone and told him that he had a Quonset building to paint. Tranum went to Columbus and conferred with Mitchell about the job, and Tranum told Mitchell that he did not know how long it would take to paint a Quonset building. It was then agreed that Tranum should paint the building and that a price would be agreed upon later. When the paint job was completed, Mitchell asked Tranum, "How much do I owe you?" Tranum told Mitchell the amount he owed him, and Mitchell paid it. The same plan of settlement was followed thereafter when Mitchell had need of Tranum's service. Mitchell did not know how Tranum arrived at the amount he charged for a completed job. The amount varied according to the size and the location of the building. Tranum testified that the amount of his bill on each job was arrived at by a charge of $1 per hour for the use of his machine, $2 per hour for his own services, and $1 per hour for a helper. The time was kept from the moment he left Mitchell's warehouse with the paint until the work was completed. Occasionally, at Mitchell's request, Tranum would re-touch or repaint sheets of the metal which had been stored in damp places and which required repainting to establish a uniform appearance for the painted surface as a whole. The time required for such additional work was included in the bill rendered when the job was completed. Mitchell carried in stock the special kind of paint that was required for the painting of galvanized iron and furnished the paint used on each job. Occa-

sionally the amount of Tranum's bill would exceed the amount which Mitchell had allowed for painting in estimating the cost of the building for the purchaser, and Tranum might then reduce the amount of his bill to satisfy Mitchell. Such adjustments were made, however, by mutual agreement of the parties, and there was never any real disagreement over the amount finally paid by Mitchell to Tranum for his work.

Mitchell testified that less than five per cent of the Quonset buildings sold by the company were painted, and painting was not a part of the regular business of the company. The company had a painting machine in its shop, but no portable machine.

The commission, after reviewing the testimony, found that not more than five per cent of the services rendered by Tranum were rendered on behalf of the Mitchell Engineering Company; that Tranum, after completing a job for Mitchell, rendered a bill for what he deemed to be a fair price for the services rendered, and that in most instances the bill rendered by Tranum was acceptable to Mitchell; and that Mitchell did not have the right to terminate the contract with Tranum at will; that neither Tranum nor any of his employees were carried on the payroll of the Mitchell Engineering Company as employees of the company; and that no deductions for social security or withholding taxes were made on behalf of Tranum or his employees by the Mitchell Engineering Company. The commission found that Tranum was not an employee of the company and was not entitled to compensation benefits under the Workmen's Compensation Act; and the commission reversed the order of the attorney-referee directing the payments of benefits and entered an order denying Tranum's claim.

The only point argued by the appellant's attorney as ground for reversal on this appeal is that the commission and the Circuit Court erred in holding that Tranum

was an independent contractor and not an employee of the Mitchell Engineering Company.

We have made a careful examination of the record, and we think that it cannot be said that the commission and the Circuit Court were in error in holding that Tranum was an independent contractor and not an employee of the Mitchell Engineering Company.

The controlling factors in this case are that Tranum was engaged in a separate business and held himself out to the public as performing an independent service; that he furnished his own tools and equipment, employed his own helpers, paid them their wages and directed the manner of their work; that he contracted for a definite completed job, and that he represented the will of his employer only as to the result of his work. Kisner v. Jackson, 159 Miss. 424, 132 So. 90; Cook et al. v. Wright, 177 Miss. 644, 171 So. 686; Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408; Sones v. Southern Lumber Co., 215 Miss. 148, 60 So. 2d 582.

Tranum testified that he contracted with owners for the painting of homes and barns around Louisville; that he had painted postoffice buildings at Louisville and at Pontotoc; and that he had done a job for the Wallace Lumber Company at Columbus, and had done contract work at Mississippi State College. Some of those jobs had been awarded to him upon competitive bids. The jobs handled for Mitchell varied in size, and the amounts paid by Mitchell to Tranum for the work done on each project depended in the main upon the size and location of the building. The work that Mitchell had for Tranum to do became necessary at unpredictable intervals; and only a small portion of Tranum's time during the last four or five years next preceding the date of his injury was taken up in the work done for Mitchell.

There is no evidence to indicate that Mitchell undertook to control the manner in which the work was being done by Tranum and his helpers while they were doing

it. It is true that Mitchell inspected the work after it was completed, and sometime before the job was completed, and if he found spots on the metal sheets where the paint had not blended properly he would have Tranum repaint the sheets which needed repainting in order that the job might be finished in a uniform color. But we think supervision of that kind only emphasized the fact that Mitchell was interested only in the final result of the work being done.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.