ANDERSON *v.* INGALLS SHIPBUILDING CORPORATION, et al.

No. 40333 January 7, 1957 91 So. 2d 756

*Donald W. Cumbest,* Pascagoula; *Young & Daniel,* Jackson, for appellant.

*White & White,* Gulfport, for appellees.

HALL, J.

In August 1951, the appellant was employed by National Advertising Company and sustained an injury to his neck and shoulder. He was admitted to a hospital in Meridian, Mississippi, and was under the care of Dr. Leslie V. Rush, who placed him in head traction and diagnosed his condition as cervical disc syndrome, with an excellent opportunity of a ruptured cervical disc C. 5 or C. 6. After nine or ten days the patient had complete relief of his pain. A short time later the patient had a recurrence of pain and returned to Dr. Rush who applied a neck brace and permitted him to return to work under limitations. The doctor recommended to appellant that if relief was not obtained from wearing the brace that he should see a neuro surgoen for surgery. In two weeks the claimant stopped wearing the brace. Several months later the appellant requested some aid in doing his work. The National Advertising Company was unwilling to furnish any additional help, and as appellant puts it "they quit paying me and I had to quit."

On January 13, 1953, appellant obtained employment with Ingalls Shipbuilding Corporation and remained in that employment until June 28, 1954. A few days later he went to see Dr. Weatherford, a doctor in Pascagoula, who sent him to Dr. William B. Patton, a neuro surgeon of Mobile, who operated on him for the correction of a ruptured cervical disc. Following the operation in July 1954, appellant filed a claim against National Advertising Company for compensation benefits arising out of the injury of 1951. His claim against National Advertising Company was barred by both the one-year and two-year statutes of limitation, Sections 6998-18 and 6998-27, Code of 1942, and appellant lost his case against National Advertising Company.

Thereafter on April 27, 1955, appellant filed a claim for compensation against Ingalls Shipbuilding Corporation for aggravation of his injury of August 1951. On February 7, 1956, after a hearing of the claim the attorney-referee found that no notice was given to Ingalls within the time prescribed by the Act. However, he did not place his decision upon lack of notice but found as a fact that the evidence in the case is insufficient to show that claimant sustained an accidental injury within the meaning of the Compensation Act while in the employment of Ingalls. On appeal the order of the attorney-referee was affirmed unanimously by the full Commission on April 24, 1956, and on appeal from the order of the Commission it was affirmed by the circuit court on May 25, 1956, and the claimant now appeals here against Ingalls and its insurance carrier.

In the case of Sones v. Southern Lumber Co., et al., 215 Miss. 148, 60 So. 2d 582, we held that where the finding of the Commission is supported by substantial evidence, we are not authorized to reverse its judgment. We have held to the same effect in a number of other cases.

Testifying in his own behalf, appellant said that the duties of his employment with Ingalls consisted mainly of climbing, putting in light bulbs, fixing hook-ups on the ships for temporary lights, hanging floodlights, carrying ladders about the yard and climbing up on buildings. He said that he first started having trouble about four or five months after he started work for Ingalls. This trouble was mainly a hurting in the shoulder and neck and in the back part of his head; that it felt like he was in a strain; that his arms gave out and that on one occasion he was climbing up the side of a ship carrying a floodlight and that his arm locked on him and he dropped the light; he also said that he had to pull heavy cables up over the side of the ship and hook them up on the panels that are provided for temporary lights on the

ship, and that he and another man did this work; that some of the cables would weigh between three hundred and four hundred pounds. He also said that he helped move motors from place to place which weigh from sixty to seventy pounds. He finally went back to Meridian to see Dr. Rush who happened to be out of town, but they took X-rays and Dr. Rush's son told him that he should go to a specialist and have an operation. Following this he went back to Pascagoula to see Dr. Weatherford who referred him to Dr. Patton in Mobile. Dr. Weatherford was engaged in private practice and was also one of the doctors for Ingalls. Claimant admitted that he talked with Mr. James A. Stafford, Chief of Plant Supervision and Safety for Ingalls, and that he told Mr. Stafford that he sustained his injury while working for National Advertising Company. He further admitted that he talked with Mr. A. M. Pelham who handled the insurance and compensation claims for the company and that he told Mr. Pelham that he did not feel that Ingalls was responsible for his condition,—that he fell and got hurt while working for National Advertising Company. He said that he went back to Dr. Rush and went to Mobile without notifying Ingalls or obtaining permission so to do. He also said that no one at the shipyards sent him to Dr. Weatherford; that he went as a regular patient. He said that he was scared to tell any one that his arm locked while at work with Ingalls because he was afraid they might think he was "putting on." He said that this was the only incident he had while working with Ingalls and that this occurred six weeks to three months before his arm and back got in such bad condition; that he did did not report it to anybody and did not talk to Pelham or Stafford until after got back from his operation. He admitted that when he testified in his case against National Advertising Company, he said that he had been in constant pain since August 1951, and that he further

said that he did not think he hurt himself at Ingalls Shipyard.

Mr. A. M. Pelham testified that in 1953 and 1954 he handled all insurance and compensation for Ingalls; that the doctors were not authorized to act for the company in case a man goes to them on his own initiative. He said that all reports of injuries are to be made to him and that he talked to the claimant in October or November 1954 and claimant mentioned no injury at Ingalls but voluntarily said that he was hurt while working for National Advertising Company. Mr. Stafford testified that appellant talked to him in October or November 1954 and that claimant said that he had been advised by his attorney to bring suit against Ingalls but that he told the attorney he was not hurt at Ingalls, did not have any charge against Ingalls and that he was injured while working with the advertising company.

Parts of his testimony in the hearing against National Advertising Company were introduced on the hearing of this case, and they show that he then testified that he did not do any heavy straining work at Ingalls; that all he did was work on "little, small" motors, make little, short welding whips and things like that; that sometimes he would go up on boats and tie in a panel for the electricians, that some of the apprentice electricians were working on the boat. He also said that his work with Ingalls was putting in fluorescent lights and switches, but that most of the time he worked in the shop. He testified that he did only a little climbing and that they used chain hoists on most of the heavy stuff. He said that he did not recall any sudden strains or anything pulled loose when he tried to do any lifting at Ingalls, and that he had been in constant pain from the time he fell while working for National Advertising Company on August 8, 1951.

There was introduced in this case a deposition of Dr. Patton which was taken for the hearing of his claim

against National Advertising Company. Dr. Patton testified that the claimant told him that the injury of August 8, 1951, was the only injury he ever had and was the onset of his trouble. Dr. Patton said that he operated twice for the ruptured disc and that it was old and calcified and had to be chiseled out.

At the hearing of the present case, it was agreed that a statement might be obtained from Dr. Patton and considered as evidence in the case. In this statement, dated August 12, 1955, he said that anyone who had an injury such as Anderson's might have trouble at any time after the injury, even turning over in bed or coughing or sneezing could cause aggravation of the cervical disc. He further stated that the job at Ingalls is no more responsible for his resulting symptoms than usual, everyday activity would be; that ordinary activity might aggravate a person's symptoms. He said that clearly in his opinion the injury at Meridian, Mississippi, is the one which caused the trouble and that no story of aggravation at Ingalls was ever told to him, that Mr. Anderson never claimed to have been injured at Ingalls. He said that it could not be proved that ordinary work aggravated his existing disc any more than it could be proved that ordinary activity occurring in one's daily life aggravated his condition or made him worse.

Mr. B. F. Gorman, Safety Supervisor for Ingalls in 1954 testified that he heard the conversation of claimant with Mr. Stafford in the Fall of 1954, and that claimant then said that he was hurt while working for some billboard company and had not been injured at Ingalls.

Dr. Leslie V. Rush testified regarding his treatment of claimant in August 1951. He also testified that a person with a degenerating disc should not engage in heavy lifting or exertion because it is his opinion that they can aggravate the existing condition by such activity. On cross-examination, he said that if a man has a violent sneeze he can have trauma that exerts pres-

sure on the disc and that he had no way of knowing what transpired while claimant was working at Ingalls. He said that prior to the time claimant went to work for Ingalls he was having symptoms and that a man with a degenerative disc could aggravate it in various ways, one of these would be muscular exertion, one might be leaning over to tie his shoes and one might be the natural progression of the disc, that any of these three things could have been contributory individually or together, and that he is not in a position to say it was one any more than the other.

 It is evident that the claimant in this case sustained a most serious injury and it is unfortunate that he slept on his rights over such a long period of time. The question facing us, however, is whether or not there is substantial evidence to sustain the finding that the proof made by appellant is insufficient to show that the claimant sustained an accidental injury within the meaning of the Compensation Act during the course of his employment with Ingalls, and it follows in accordance with our holding in numerous cases that the judgment of the lower court must be affirmed.

Affirmed.

*Roberds, P. J.,* and *Kyle, Holmes* and *Gillespie,* JJ., concur.