**Hilburn PITTS, Plaintiff-Appellant, United States Fidelity & Guaranty Company, Intervenor,**

v.

**SHELL OIL COMPANY, Defendant-Appellee,**

and

**Chesley Pruet Drilling Company, Third Party Defendant.**

No. 71–2652.

United States Court of Appeals, Fifth Circuit.

June 26, 1972.

Stanford Young, Waynesboro, Miss., for appellant.

William S. Mullins, III, Laurel, Miss., for U. S. Fidelity & Guaranty Co.

Joe H. Daniel, Daniel, Coker, Horton, Bell & Dukes, Jackson, Miss., for Shell Oil Co.

Matthew Harper, Jr., Laurel, Miss., for Chesley Pruet Drilling Co.

Before RIVES, COLEMAN and DYER, Circuit Judges.

RIVES, Circuit Judge:

On July 21, 1969, Hilburn Pitts was apparently injured while performing his job as a roughneck. For some 15 years Pitts had been in the employ of Chesley Pruet Drilling Company. At the time of the accident, Pruet was engaged in drilling an oil well for Shell Oil Company.

In his complaint against Shell, filed as a diversity action in the United States District Court for the Southern District of Mississippi, Pitts alleged that while working as an employee of Pruet he had inhaled hydrogen sulphide gas. Pitts further alleged that his injuries were proximately caused by the negligence of Shell in "failing to provide the appropriate safety measures to prevent the poisonous gas from escaping, etc."

On account of the injury, Pitts received workmen's compensation benefits from Pruet's compensation insurance carrier.

Shell denied that Pitts sustained any injury. Moreover, said Shell, even if Pitts was hurt, he cannot sustain an action against Shell because: (a) under Mississippi law Pitts was a compensation-covered employee of Shell as well as of Pruet; and (b) he was receiving full benefits from Pruet.

Shell moved for summary judgment based upon the deposition of Pitts, the affidavit of Shell's engineer on the drilling site, and upon the response of Pitts to Shell's request for admission of facts. Rule 56, F.R.Civ.P. Shell's first motion for summary judgment was denied. Upon a claimed extension of the record and after filing a third party complaint against Pruet, Shell again moved for summary judgment. Pruet filed its own motion to like effect. This time, the district court held that there was no genuine issue of material fact and granted Shell's motion. We reverse.

If Pruet was an employee of, as opposed to an independent contractor for, Shell then Pitts was also an employee of Shell. As such Pitts' sole avenue of relief would be workmen's compensation. Pitts claims that Pruet was an independent contractor. We need not distill the correct answer; rather we ask whether there is a genuine issue as to Pruet's relationship with Shell.

To resolve the propriety of granting summary judgment, two questions must be resolved: (1) Under Mississippi law, what is the test for an independent contractor vis-a-vis an employee? (2) Under the federal law governing summary judgment, is there a genuine issue as to any material fact necessary to determine whether Pruet was an employee of, or an independent contractor for, Shell, as those terms are used in Mississippi?

## I.

The Mississippi Supreme Court has often undertaken to limn the test for an independent contractor. On balance it can be fairly stated that Mississippi has adopted a bifurcated test. The first, and seminal, inquiry is whether the alleged employer (Shell in this case) has the *right* to control, as opposed to actual control over, the details of the alleged employee's (Pruet's) work. Biggart v. Texas Eastern Trans-

mission Corp., Miss.1970, 235 So.2d 443; Brown v. L. A. Penn & Son, Miss.1969, 227 So.2d 470; White Top and Safeway Cab Co. v. Wright, 1965, 251 Miss. 830, 171 So.2d 510; Boyd v. Crosby Lumber & Mfg. Co., 1964, 250 Miss. 433, 166 So. 2d 106. If one in Shell's position is interested only in the ultimate outcome of the labor, then an independent contractor relationship exists. In determining where the right of control lies (with Shell or with Pruet) the court must consider: (1) direct evidence bearing on the right (such as a contract between the parties); (2) evidence as to who actually exercised the power of control; (3) the method devised for paying the alleged employee and its sub-employees; (4) who furnished the equipment; and (5) who had the right to discharge workers. *Boyd, supra.*

Additionally, the Mississippi Supreme Court has looked to the nature of the alleged employee's work, relative to the nature of the alleged employer's work, in order to ascertain whether the type of work performed by the alleged employee is sufficiently independent in nature to warrant finding that the alleged employee himself should be deemed an independent contractor. Here the court has considered the alleged employee's work in the following light:

> " '[T]he character of [his] work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring

of continuing services as distinguished from contracting for the completion of a particular job.' 1 Larson, § 43.52 * * *."

*Boyd, supra,* 166 So.2d at 110.

Bearing in mind the above tests, we turn to a consideration of the facts in this case.

## II.

■ Pitts, in answer to Shell's request for admission of facts affirmatively stated that Shell had the *right* to control the details of Pruet's well drilling operations. At first blush, then, it would appear that there is no legitimate issue of material fact, for Pitts has in essence admitted that Pruet was not an independent contractor. Yet for summary judgment to be appropriate, Rule 56 requires not only that no genuine issue of material fact exist, but also that the moving party be entitled to prevail as a matter of law.[1] In our estimation, Shell is not so entitled.

The question of who had the right of control is the ultimate issue in this case; it is a mixed question of law and fact. Pitts was not a foreman, he was not in a managerial position with Pruet. From whence could he garner knowledge as to essence of the agreement and relationship between Pruet and Shell? Pitts was simply not competent to comment on the aegis of the right. He should have the opportunity to raise the issue of his competency at trial. As Professor Moore has ably noted, "[T]he principle that a person making an admission is estopped to deny it 'while generally salutary, must surely be subject to qualification under appropriate circumstances' * * *." 4A Moore's Federal Practice ¶ 36.08.

---

[1]. As this Court has said on an earlier occasion:

"[B]efore rendering judgment the Court must be satisfied not only that there is no issue as to any material fact, but also that the moving party is entitled to a judgment as a matter of law. Where, as in this case, the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law."

Palmer v. Chamberlin, 5 Cir. 1951, 191 F.2d 532, 540.

In awarding summary judgment, all inferences of fact from the proffered proofs must be drawn against the movant and in favor of the party opposing the motion. The burden of showing the absence of a genuine issue of material fact falls squarely, and with great weight, upon the moving party. 6 Moore's Federal Practice ¶ 56.04[2]. The court may look, *inter alia*, to the pleadings, to depositions, to affidavits, and to admissions.

### A. *Evidence on the Right of Control*

The following language appears in the written contract between Shell and Pruet:

"14. *Indemnity*

"In the performance of all work hereunder [Pruet] is an independent Contractor, Shell being interested in only the results obtained, but the work herein contemplated shall meet the approval of Shell. [Pruet] acknowledges that neither [Pruet] nor any of [its] employees are employees of Shell."

The contract at issue was entered into at arms length. At least there is no evidence to the contrary. There is no indication that paragraph 14 thereof was intended to subvert any legal obligations on the part either of Shell or of Pruet or that at the time of its formation either party was insolvent. *Ab initio*, then, the contractual provision is of great weight in resolving the source of the right to control the details of Pruet's work. Although such a provision may not be controlling in a trial on the merits (*see Boyd, supra*), it is prima facie sufficient to raise a genuine issue of fact on motion for summary judgment.

The only evidence before this Court tending to show that Shell did have the right to control Pruet emanates from the self-serving statements of Shell (in its pleadings and through the affidavit of its employee, Farr) and from similar self-serving [2] statements by Pruet. Certainly those statements should not carry the day.

Shell also adverts to statements made by Pitts during his oral deposition to the effect that Paul Farr, an employee of Shell, had actual control over the details of the work which Pruet was performing. However, in other parts of his deposition Pitts made it clear that employees of Pruet would not take direct orders from Farr. Such orders would be obeyed only if passed down channels through Pruet's driller and tool pusher. One inference to be drawn from such testimony is that Shell did not have the power directly to control the work of Pruet's sub-employees. In light of Rule 56's command that inferences be drawn in favor of the nonmoving party, we conclude that such an inference cuts against Shell's position. For if Shell were in control it would have the power directly to control all of Pruet's employees, not merely the power to request action from Pruet's driller and tool pusher.

### B. *The Furnishing of Equipment and the Mode of Payment*

Additionally, the contract discloses that the working relationship between Shell and Pruet was for a fixed period (that necessary to drill one well) at a given rate per drilled foot; that for significant periods of time Pruet was to bear the expense for loss of the well hole; that Pruet was to supply a considerable amount of the equipment used (*e. g.,* the derrick, at least 12,000 feet of the wire line and a reel for wire line work, pumps, collars, etc.) and all employees,[3] including a foreman; and that Pruet was responsible for paying its own employees. Admittedly, Shell

---

2. If Shell is found liable, Pruet may have to indemnify pursuant to contractual arrangement.

3. Pruet was also to establish the number of employees to be hired and their rate of pay. The compensation to Pruet was not to vary with the number of laborers engaged in the drilling operation.

was to supply some of the equipment. Yet in the light most favorable to Pitts, the above facts would tend to indicate an independent contractor relationship between Shell and Pruet.[4]

C. *The Right to Discharge Pruet's Employees*

There is little if any evidence on whether Shell had the right to discharge Pruet's employees. The following colloquy transpired during the oral deposing of Pitts:

"Q. * * * What could the Shell engineer change?

"A. [Pitts] Well, he is the operator, and if he didn't like the tool pusher, I imagine he could have Pruet to move him, don't you think so?

"Q. Do you think so?

"A. [Pitts] I would say yes."

Drawing the inference most favorable to Pitts, it appears that Shell could not directly fire a Pruet employee. Rather, if Shell were displeased with an individual, it would have to go to Pruet and ask that such employee be removed. That an employee might actually be fired upon Shell's request would not necessarily render Pruet an employee of Shell. In the context of modern business reality, an independent contractor might well discharge one of its employees at the behest of the party letting its services. *See* Sones v. Southern Lumber Co., 1952, ·215 Miss. 148, 60 So.2d 582. Before we can consider the legal effect to be given

a right on the part of Shell to fire Pruet's employees, we would have to be convinced that such right existed. The burden is on Shell to demonstrate the existence of the right; it has failed that task.

Thus we conclude that there was a legitimate issue of material fact in this case—namely, whether Shell had the right to control the details of Pruet's labor. Of course, we in no way intend to imply that on the merits Pitts should prevail. That question is for the jury.

■ Finally, applying the relative nature of the work test (see *Boyd, supra*), we could not hold as a matter of law that a drilling company, such as Pruet, does not perform the type of work which can be ascribed to an independent contractor. Considering the factors averred to by the Mississippi Supreme Court in *Boyd, supra,* we note that Pruet's job is one requiring great skill; that Pruet was only intermittently employed or contracted with by Shell (at least according to the evidence); and lastly that there is no evidence to show that Pruet worked exclusively for Shell and did not perform substantial services for the other oil companies.

In sum, applying either test espoused by the Mississippi Supreme Court for determining whether a particular party is an independent contractor, we come to the conclusion that this case is one for the jury.

Reversed and remanded.

4. With respect to the fact that Pruet supplied, fixed the compensation for, and paid its employees, see Sones v. Southern Lumber Co., 1952, 215 Miss. 148, 60 So.2d 582; Carr v. Crabtree, 1951, 212 Miss. 656, 55 So.2d 408; that Pruet furnished the equipment, see Employers Insurance Co. v. Dean, 1956, 227 Miss. 501, 86 So.2d 307; Kughn v. Rex Drilling Co., 1953, 217 Miss. 434, 64 So.2d 582; Sones, *supra;* Carr, *supra;* and that the duration of the contract was for a fixed relatively brief period, see Empire Home Bldrs. v. Guthrie, Miss.1966, 187 So.2d 17; Boyd, *supra;* Dean, *supra;* Sones, *supra;* Carr, *supra.*