No. 2992

Second Circuit

---

ROBINSON  ET  AL
v.
YOUNSE  LBR.  CO.  ET  AL

---

(December 21, 1927. Opinion and Decree.)
(March 14, 1928. Rehearing Refused.)
(May 7, 1928. Writ of Certiorari and Review denied by Supreme Court.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 156.**
Where A and B pool their interests to enter a joint enterprise, A going into the woods, felling the timber and hauling it to the mill, while B had charge of the mill, they are both liable in solido under the provisions of the Workmen's Compensation Act No. 20 of 1914 and amendments.

2. **Louisiana Digest—Master and Servant —Par. 154, 156.**
The fact that the remuneration paid an employee was dependent upon the amount of timber cut, the employee having the right to quit when he choose, instead of a stipulated wage does not make him an independent contractor under the Workmen's Compensation Act No. 20 of 1914 and amendments.

3. **Louisiana Digest—Master and Servant —Par. 154.**
The Workmen's Compensation Act No. 20 of 1914 and amendments should be given a liberal interpretation in favor of the laborer. Therefore, the courts will not allow an employer to escape the provisions of the act by placing a suppoosed independent contractor over his laborers.

4. **Louisiana Digest—Master and Servant —Par. 160.**
Under Section 8 of the Workmen's Compensation Act No. 20 of 1914 as amended by Act No. 38 of 1924, the widow and two minors of deceased are entitled to compensation of sixty-five per cent of the weekly wage for a period of three hundred weeks, payable weekly with five per cent interest from date due.

Appeal from the Third Judicial District Court of Louisiana, Parish of Jackson. Hon. S. D. Pearce, Judge.

Action by Mrs. Lola Robinson et al against J. R. Younse Lumber Co. et al.

There was judgment for plaintiffs and defendants appealed.

Judgment amended and affirmed.

E. L. Walker, of Ruston, attorney for plaintiffs, appellees.

J. M. Munholland, of Monroe, attorney for defendants, appellants.

CDOM, J. The plaintiff is the surviving widow of J. Mack Robinson who was employed as a log cutter and who while at work in the woods cutting logs a limb fell on his head and killed him.

Plaintiff brings this suit under Act No. 20 of 1914 and amendment for compensation for the joint benefit of herself and her two minor children, issue of her marriage with J. Mack Robinson, all having been dependent upon him for support.

She asks judgment against the J. R. Younse Lumber Company and against J. R. and T. R. Younse in solido upon the theory that the J. R. Younse Lumber Company is a commercial partnership composed of said individuals, and in the alternative, if the court should hold that there is no commercial partnership, then in that event she asks that said J. R. and T. R. Younse be condemned in solido for the full amount which she claims.

Defendants J. R. and T. R. Younse deny that any commercial partnership existed between them, and while it is conceded that J. R. Younse was conducting a saw mill business under the name of J. R. Younse Lumber Company and that each was in a way connected with that business, yet they contend there was in fact no contractural relationship existing between the two oand that the mill was owned and operated and the business was conducted by J. R. Younse individually under the trade name of J. R. Younse Lumber Company.

Under the view which we take of the issues involved in this litigation, it is not necessary to discuss or determine the question whether there was or was not a commercial partnership existing between the two Messrs. Younse. Our conclusion is that they are bound jointly and in solido to plaintiff for the amount of compensation which she claims, regardless of whether they were commercial partners or not, under the facts disclosed by the record.

The pertinent facts are that J. R. Younse owned a saw mill situated in Jackson Parish. His brother, T. R. Younse, owned no interest in the mill and its equipment. J. R. Younse was engaged in the saw mill business. There was a tract of timbered land containing 120 acres located within a short distance of his mill which was for sale. Through some arrangement, not definitely disclosed, J. R. Younse got the Monroe Grocery Company, Ltd., to purchase the land. He acted as said company's agent in the purchase and for the purchase price he drew a draft on said company in favor of the vendors and attached it to the deed, as we infer, which draft was handled by a bank in Jonesboro.

While the deed to the land was taken in the name of the Monroe Grocery Company, Ltd., and it furnished the cash with which to pay the purchase price, the circumstances prior and subsequent to the transaction indicate very strongly that the property was purchased for J. R. Younse under some arrangement by which Younse should cut the timber and pay for it, as cut. But whether the arrangement was made prior or subsequent to the purchase of the land, J. R. Younse says he did purchase or secure the timber from the grocery company to be paid for as cut. He testified that he made the trade for the timber or secured it and that he was to pay for it as cut. His brother, T. R. Younse, had nothing whatever to do with the negotiations, and

while he subsequently logged the timber, as will be detailed later, he testified that he did not know while cutting whose timber it was.

So that the situation with reference to J. R. Younse was that he owned a saw mill, was in the saw mill business, needed timber for the operation of the mill and secured it from the Monroe Grocery Company, Ltd.

In order that the timber might be manufactured into lumber, the timber, of course, had to be cut and hauled to the mill. His brother, T. R. Younse, owned wagons, teams and trucks, all his individual property. J. R. Younse, the owner of the mill and who had procured the timber, and T. R. Younse, the owner of the logging outfit, entered into a contract by which T. R. Younse was to log the mill; he was to have the timber felled, cut into logs, hauled to the mill and placed on skidways, all at his own expense. In addition to the expense of logging the mill, he was to be charged $1.00 for each thousand feet of timber cut, to be applied on the purchase price, and to be paid the Monroe Grocery Company, Ltd., and $1.00 for each thousand feet of lumber manufactured for hauling it to a shipping point. All this timber was to be delivered by T. R. Younse at J. R. Younse's mill to be there manufactured into lumber and sold.

T. R. Younse's remuneration for logging the mill was one-half the proceeds of all lumber sold, the other one-half to go to J. R. Younse for manufacturing it. It was agred, however, that ift the lumber was not sold it should be divided half and half between the two.

J. R. Younse, the owner of the mill, operated the mill personally and paid all expenses. He sold the lumber and kept account of the proceeds. They had settlements at intervals and, as stated, divided the proceeds equally between them.

J. R. Younse, the owner of the mill, seeks to escape liability for the death of a log cutter on the ground that he had nothing to do with the cutting of the logs or the logging of the mill; that his brother, T. R. Younse, had charge of that end of the business; that T. R. Younse was an independent contractor, and that plaintiff's right of action, if any, at all, was against T. R. Younse and not against him.

We are not impressed with that defense.

J. R. Younse owned the mill outfit and procured the timber. T. R. Younse owned ι logging outfit. The mill was useless without logs, and the logging outfit was useless without logs to haul. These parties, as we see it, pooled their interests and entered into a common, joint enterprise, one branch of which was to go into the woods, fell the timber, saw t into logs and haul them to the mill, and while T. R. Younse was to have charge of the logging, yet J. R. Younse was as vitally interested in getting the logs to the mill as was T. R. Younse. The logging was not the separate enterprise of T. R. Younse but a joint enterprise of both.

So those who were employed to cut the logs in the woods were emplyees of both T. R. and J. R. Younse and not of one of them.

By no stretch can it be said that T. R. Younse was an independent contractor. He did not contract a specified piece of work for a specified price. He was to have the logs cut and hauled, that was his part of the logging contract, but there was no agreement that he should

receive any specified amount. His remuneration depended first on whether the lumber was sold and if sold upon the price; he had a joint interest in the manufactured product, and, if sold, in the proceeds.

It is true he controlled the cutting and hauling of the logs. But that was his part of the business. It is usual and, indeed, necessary in the conduct of an enterprise involving several branches, for the different individuals interested to have charge of the separate branches; as in a mercantile business, for instance, one partner may be the buyer, another a salesman, and another a bookkeeper—each controlling his separate branch.

The logging business in this case being a joint enterprise of J. R. and T. R. Younse, they are jointly and in solido bound for the compensation due for the death of one of their employees.

T. R. Younse, in carrying out his part of the logging business, employed a man named Sewell Lee to have charge of the cutting of the logs. Lee was to employ men to cut the trees down and saw them into logs. He was paid $1.25 for each thousand feet cut, less the price of cutting which was $1.00. He had charge of the woods, laid the land off in strips, showed the men where to cut, furnished and sharpened the axes and saws, and scaled the logs. He kept a scale of the logs cut by each cutter and turned it in to T. R. Younse who paid the cutters. Mr. Yountse testified that he always paid the cutters, but said he paid them for Mr. Lee and charged the amounts back to him. Lee was not employed to cut any specific piece or amount of timber but only what was necessary to log the mill. His remuneration depended upon the amount of timber

cut, much or little. If none was cut he got nothing. He was at liberty to quit when he chose, which implies that he was subject to discharge without notice or cause. The fact that his compensation was made to depend on the amount of timber cut instead of a stipulated wage or salary makes no difference in a case like this.

Heine vs. Hill, Harris & Co., 2 La. App. 384.

Dick vs. Gravel Logging Co., 152 La. 993, 93 So. 198, and cases therein cited with approval at the bottom of page 998.

Mr. Lee was the agent and employee of these defendants and not an independent contractor. He represented them in their operations in the general scheme and enterprise of logging the mill. It is true that he employed the log cutters and directed them, but he would have done the same if he had been employed by them as a woods foreman at a stipulated salary.

In cases of this kind, we must keep in mind always the purpose of the Workmen's Compensation Act and its specific provision that it shall be given a liberal interpretation in favor of the laborer.

If those engaged in the saw mill business, which includes logging, were permitted to put an impecunious man in charge of the log cutters and base his compensation upon the amount of logs cut instead of paying him a salary and when sued for compensation plead that the man in charge was an independent contractor, the laborers in the woods would be entirely cut off and the purpose of the law would be thwarted.

If courts should permit those engaged in industrial enterprises to escape liability in this way, the door would be left wide open to all kinds of subterfuge to escape

liability and the act would be a dead letter in the books.

We do not mean to hold and do not hold that a man cannot make an independent contract to cut or haul logs, for we think he can. But in this case it must be borne in mind that he had not one dollar invested. When he wanted saws or axes or oil for the cutters, he sent to Younse for them and they were merely charged to him and the price deducted from what was coming to him. What was coming to the men in the woods was paid by Younse and likewise charged to Lee. In effect, Younse furnished everything, so that all Lee did was to hire the men, superintend the work and scale the logs.

Now, as to the last defense. Defendants contend that J. Mack Robinson, the deceased, was himself an independent contractor and not an employe, and therefore plaintiff cannot recover.

Robinson was a log cutter employed by Sewell Lee to cut logs in the woods. The men worked in pairs, Robinson working with Robert Shows. He and Shows got $1.00 per thousand, which they divided equally between them. Lee laid off the land in strips and assigned a strip to each pair; they were shown where to cut, required to cut all the timber on their respective strips and to cut them clean. The men went to work when and worked as they pleased, so far as hours were concerned. The compensation depended on the amount of logs cut. They were given no specific instructions as to the length of the logs, but were instructed to cut according to the general rules, which all log cutters understood.

Mr. Lee testified that if the men had cut the logs in improper lengths he would have interfered and had them cut as he wanted them cut; that if Robinson and Shows had left the strip and gone to another he would have ordered them back and if they had refused he would have discharged them.

They were therefore under his direction and control and were common laborers and not independent contractors.

Counsel for defendants cites and relies upon the case of Hilton vs. Tall Timber Lumber Co., 158 La. 186, 86 So. 729, in support of his contentions. But that case is not controlling. It has never been followed but has been, in effect at least, twice overruled.

Bell vs. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350; Dick vs. Gravel Logging Co., 152 La. 993, 93 So. 192.

The Disrict Judge found from the evidence that plaintiff's husband was earning at the time of his death $15.00 per week, which we think is correct, and he awarded judgment for 60 per cent of that amount, or $2700.00, to be paid in weekly payments of $9.00, for 300 weeks.

Under Section 8 of Act No. 38 of 1924, amending the original act, if the deceased leaves a widow and two or more minor children, all dependents, they receive 65 per cent of wages "for a period of three hundred weeks." The deceased in this case left a widow and two minors, all dependent. They are entitled to $9.75 ptr week for 300 weeks, payable weekly, with interest.

The court below also allowed $284.25 for medical, surgical, hospital and burial expenses, which was all it found proved.

We find it necessary to slightly amend the judgment.

For the reasons assigned, it is ordered, adjudged and decreed that the plaintiff, Mrs. Lola Robinson, for the joint benefit of herself and her two minor children, Winnie V. and Jesse Robinson, have judgment against and recover from J. R. Younse and T. R. Younse individually and in solido compensation in the sum of nine and 75-100 ($9.75) dollars per week for a period of three hundred weeks, with 5 per cent interest on each weekly installment from the due date until paid, the payments to begin July 24, 1926; and for the further sum of two hundred eight-four and 25-100 dollars for medical, surgical, hospital and burial expenses, with 5 per cent interest from date of judgment until paid, and all costs of this suit.