Brown *v*. E. L. Bruce Company, Inc., et al.

No. 43514 May 3, 1965 175 So. 2d 151

*W. Lester McDonough,* New Albany, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellees.

RODGERS, J.

This is a workmen's compensation claim. The defendants denied that claimant was an employee of E. L. Bruce Company, and alleged he was employed by an independent contractor.

The case came to this Court from the Circuit Court of Holmes County on an appeal from a judgment affirming the order of the Workmen's Compensation Commission denying the appellant's claim.

The record shows that the claimant was permanently injured on February 27, 1961, in an accident in which a log rolled across his body from a truck he was operating. The claimant had released a binder on the truck loaded with logs, and a log fell on him. Claimant was transporting logs from a pasture where they had been "bunched" or gathered together, to the railroad yard at Goodman, Mississippi, for shipment to Bruce, Mississippi. After a prolonged illness, appellant filed his claim for workmen's compensation against E. L. Bruce Company, hereafter called "Bruce", and defendants denied liability and filed a copy of a contract entered into between Bruce and one W. L. Kirby. [1]

The claimant was employed by Mr. Kirby who owned a log truck, log chains, binders and a peavey, equipment used in the operation of the truck. Claimant testified that Mr. Kirby directed his activity and had the right to fire him. He testified that Mr. Kirby "had the truck for E. L. Bruce and I was driving it." When he was asked if he were under the direction and control of Mr. Kirby, he replied "No, sir, not when

I was out there in the woods — had to do what the wood foreman said.'' The evidence discloses that claimant worked at a prior logging operation near Holly Bluff, and operated Mr. Kirby's truck to haul logs for Bruce. He had been subject to the direct supervision of a Mr. Stewart, the woods' foreman for Bruce. The claimant lived at Bruce's logging camp. He was awakened each morning and put to work by Bruce's foreman. His meals were brought to him in the field, on the job, by the employees of Bruce, and he was told when to quit work by Bruce's foreman. Mr. Kirby did not then, nor later, at Goodman, direct the detailed activity of Mr. Brown. The testimony shows that Bruce had the following logging equipment at Goodman, a Logger's Dream loader, a caterpillar and a bulldozer at the place where the logs were ''bunched'' near Goodman; and that in order for the claimant to transport the logs, it was necessary for Bruce to operate the Logger's Dream loader by loading the logs on the truck driven by the claimant. He could not work except when Bruce put the logs on the truck. Bruce used its equipment to pull trucks mired in the mud. The record further reveals that Mr. Kirby used a ''crane'' or ''dragline'' he had leased from Mrs. Al McCullough for the purpose of loading logs on the railroad cars for Bruce. At the time claimant was injured, Mr. Kirby was at Canton, Mississippi, loading logs for Bruce. When the case was tried, Mr. Kirby was loading logs for Bruce under an arrangement with a Mr. White. Mr. Kirby seldom went about the place where the log trucks were being loaded. Mr. Kirby's testimony was largely ''Yes'' and ''No'', but he admitted that Bruce had authority to ''fire him off the job'', and that he could have quit any time he wanted to. He testified that ''She told me to go wherever they made up the logs for loading.'' Apparently ''she'' meant Mrs. McCullough, and ''they'' meant the log haulers for Bruce, including the operator

of his own truck. Mr. Frank McAlpine, Manager of E. L. Bruce Company, testified that he did not have the right to have Mr. Kirby fire Mr. Brown. Nevertheless he said he had the right under the contract to discharge Mr. Kirby, and that Mr. Kirby and Mr. Brown could have quit at any time they wanted and would not have been sued. He said the truck drivers were told by a local foreman when to start hauling after a rain, and said ''He would notify the contract driver.'' ''A lot of that you just know after you have been doing it a number of years. It goes along with this.''

The issue then is clearly drawn: Was W. L. (Leroy) Kirby under the facts here presented in the business of an independent contract log hauler, or was he simply an employee of Bruce? If he was an employee, claimant was an employee and is entitled to compensation. After a careful examination of the facts, we have reached the conclusion that Mr. Kirby was an employee of Bruce and not an independent contractor.

We have pointed out in the previous opinions of this Court, from time to time, that: ''At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent.'' Kisner v. Jackson, 159 Miss. 424, 132 So. 90, 91 (1931). See also Stovall's Estate v. A. Deweese Lbr. Co., 222 Miss. 833, 77 So. 2d 291 (1955); Sones v. Southern Lbr. Co., 215 Miss. 148, 60 So. 2d 582 (1952).

The various tests enumerated in our previous opinions are simply methods to be used as an aid in determining whether or not the contractor was an employee, an agent, or a person engaged in an entirely different business, the services of which are contracted to another as the services of an independent contractor. It has been said that an independent contractor is any person following a regular, independent employment in the course of which he offers services to the public to accept orders and execute commissions, for all who may

employ him in a certain line of duty, using his own means for the purpose of being accountable only for the final performance. "Examination of the definitions substantially adopted by most of the courts makes it evident that one of the basic elements of the independent contractor relationship is the fact that the contractor has an independent business or occupation." 27 Am. Jur. *Independent Contractors* § 2 at 482-483 (1940).

■■ ■ It has been said that one of the primary tests "in determining whether a person employed to do certain work is an independent contractor of a mere servant is the control over the work which is reserved by the employer. Whether one is an independent contractor depends upon the extent to which he is, in fact, independent in performing the work. **(Hn 3)** Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." 27 Am. Jur. *Independent Contractors* § 6 at 486 (1940). This rule has been repeatedly sanctioned by this Court. Kisner v. Jackson, 159 Miss. 424, 132 So. 90 (1931); Caver v. Eggerton, 157 Miss. 88, 127 So. 727 (1930).

The evidence in this case shows that Mr. Kirby had signed more than fifty contracts over a period of twelve years similar to the contract here exhibited.[1] He did not personally engage in the operation of the log truck he owned, nor direct its movement during working hours. He had another job operating a dragline which he had leased from Mrs. McCullough for the purpose of loading logs for Bruce. He had two men helping him in the operation of the dragline.

It is apparent that Mr. Kirby had devoted his entire time, for a period of twelve years, in the service of Bruce. His trucks had hauled their logs on various jobs and he had leased equipment to load logs for them on different jobs. The manager of Bruce Lumber Company explained the situation by saying: "A lot of that you

just know as you have been doing it for a number of years. It goes along with this.'' During all of this time and under similar contracts, it was recognized that Mr. Kirby could quit working for Bruce at any time, and Bruce had the right to fire him. A causal examination of the testimony reveals that Mr. Kirby did not operate an independent log hauling business, nor an independent professioal service, but that his work with his truck and his other job were meshed into and were an integral part of the business of Bruce.

In Dunn, Mississippi Workmen's Compensation Law and Practice Rules and Forms, Section 73, (Cum. Supp. 1963), in a documented paragraph, the author points out:

"However, liberal treatment and application of the common-law guides is becoming increasingly evident in the compensation field. The same guides are pertinent for consideration, but a liberal result is reached by a shift of emphasis to those factors favoring the existence of employment status.

"It is said that the modern tendency is to find employment when the work being done is an integral part of the regular business of the employer and where the worker, relative to the employer, does not furnish independent business or professional service. The common-law test is retained but where the workman is performing a task which is an integral part of the regular business of the employer, the control element, necessary to establish employment status, may be found from the fact (1) that the contract engagement is not for a definite time or a specific piece of work and (2) that the engagement is terminable at will.''

It has been said in 27 Am. Jur. *Independent Contractors,* Section 17, 499, 500 (1940), that:

"The fact that a person has no particular calling or occupation, but works at anything he can get to do

for anyone who will employ him, is peculiarly persuasive that he is not an independent contractor; and while it would seem that one can employ any person he selects to do an independent piece of work, nevertheless, it has been said that a person cannot be an independent contractor unless he holds himself out as having an occupation with which he is familiar.''

In the case of Sones v. Southern Lumber Company, 215 Miss. 148, 60 So. 2d 582 (1952), in which the facts are similar to the facts in the instant case, we cited *Kisner, supra,* with reference to the common-law test, in determining the status of an independent contractor, and we said:

''The rule is even more liberal in compensation cases. In Larson's Workmen's Compensation Law, Vol. 1, Sec. 43.42, at pages 630-631, it is said: 'The ''servant'' concept at common law performs one main function: to delimit the scope of a master's vicarious tort liability. * * * By contrast, compensation law is concerned not with the injuries *by* the employee in his detailed activities, but with injuries *to* him as a result not only of his own activities (controlled by the employer as to details) but of those of co-employees, independent contractors and other third persons (some controlled by the employer, and others not). To this issue, the right of control of details of his work has no such direct relation as it has to the issue of vicarious tort liability. So, for example, * * * if I regularly, year in and year out, engage an individual trucker to transport logs from my woods to my lumber mill, which is an integral part of my lumbering operation, paying him by the load, and reserving no right of control over the details of his work, it is quite possible that this man is as appropriate a subject for compensation protection as any worker that could be found. He is taking a regular and continuous part in the manufacture of my product; his work is haz-

ardous; his rate of pay is such that he and his family cannot be expected to bear the cost of industrial accident. In every respect, he is the kind of worker for whose benefit the compensation act was thought necessary.''

We also cited in *Kisner,* Robinson v. Younse Lumber Company, 8 La. App. 160 (1927), wherein that Court said:

''If those engaged in the sawmill business, which includes logging, were permitted to put an impecunious man in charge of the log cutters and base his compensation upon the amount of logs cut instead of paying him a salary and when sued for compensation plead that the man in charge was an independent contractor, the laborers in the woods would be entirely cut off and the purpose of the law would be thwarted. If courts should permit those engaged in industrial enterprises to escape liability in this way, the door would be left wide open to all kinds of subterfuge to escape liability and the act would be a dead letter in our books.''

 █ When contractors engaged in the transportation business, hold themselves out as offering to contract with the public in a manner similar to public liverymen or draymen, using their equipment to haul for the general public, they may be considered independent contractors. █ On the other hand, when persons engaged in transporting property for another — almost entirely if not exclusively — work for one person over a period of years, with the understanding that the contract between the parties may be terminated at will by either party, or that the employing party may discharge the person transporting property under contract with no reciprocal obligations between the parties, such facts strongly indicate the contract hauler is no longer an independent contractor but has assumed the status of an employee under the relationship of master and

servant. Such contractor's transportation business has become meshed with and is an integral part of the employer's business. Louisiana Oil Corporation v. Renno, 173 Miss. 609, 157 So. 705, 98 A. L. R. 1296 (1934); 27 Am. Jur. *Independent Contractors* § 21 (1940). See also Annots. 120 A. L. R. 1031 (1939), 98 A. L. R. 1296 (1934), 43 A. L. R. 1312, 1316 (1926), 42 A. L. R. 607, 616 (1926), 20 A. L. R. 761, 765 (1922).

There are other similar cases heretofore reported from the opinions of this Court. Most of these cases are cited in Boyd v. Crosby Lumber and Manufacturing Company, 250 Miss. 433, 166 So. 2d 106. The facts in *Boyd* are so nearly the facts in the instant case that it is useless to attempt to distinguish *Boyd* from the case now before the Court. We are of the opinion that the instant case is controlled by *Boyd*.

The record shows that all parties have agreed that the claimant is totally and permanently disabled as the result of his injury on February 27, 1961.

 In the light of the facts introduced in the record in this case, it is impossible to resist the conclusion that Mr. Kirby was an employee of E. L. Bruce Company, and that his helper, Mr. Brown was also an employee.

The judgment of the Circuit Court of Holmes County and the order of the Workmen's Compensation Commission denying the claim of appellant will be reversed, and a judgment will be entered here allowing claimant total and permanent disability compensation, future medical expenses, interest and damages provided by the Workmen's Compensation Law. The case will be remanded to the Workmen's Compensation Commission for administrative processing, including allowance of attorney's fees heretofore made by the Commission.

Reversed, judgment here for claimant, and remanded to Workmen's Compensation Commission.

*Kyle, P. J., and Jones, Brady and Patterson, JJ.,* concur.

12

[1] "Contract No. 4

## "CONTRACT

"This agreement made this the 30th day of January 1961, by and between E. L. Bruce Company of Bruce, Mississippi, first party, and W. L. Kirby, second party, "WITNESSETH:

"That for and in consideration of the mutual promises herein contained, the parties hereby agree as follows:

"1. The first party, in the operation of its lumber business, owns certain logs, lumber, and crossties, located at various and sundry places in the State of Mississippi, and it becomes necessary from time to time to have same moved and transported to its plant at , Mississippi, or some other point. The second party hereby agrees and contracts to haul, transport, and deliver such logs, lumber or crossties on the conditions and for the consideration hereinafter set forth:

"(a) The second party agrees to haul, transport, and deliver such logs, lumber, or ties, as from time to time may be designated by the first party to such place or places as the first party may designate.

"(b) The second party shall handle, haul, transport, and deliver said logs, lumber, or ties in a proper, reasonable, safe, and workmanlike manner, and in so doing he shall use his own trucks, machinery and equipment, and the means or method of conveyance shall be in his exclusive charge and control, and the equipment and employees of the second party, and the means and methods of performing this contract shall not be subject to the control or supervision of the first party, and it is expressly understood that the first party does not hire or rent the equipment or conveyances used, or assume any liability for the use or methods of use thereof. It is understood that any employees of the second party in connection with said work shall be under the exclusive control of the second party, and the first party shall

have no supervision or control over them and no responsibility or liability for their actions or compensation.

"(c) The first party hereby agrees to pay the second party for the hauling, transporting, and delivering of said logs, lumber, and ties to places designated by the first party, the sum of $4.00 per thousand feet, same to be payable every one week(s), for the amount actually delivered during that period.

"2. Except as hereinbefore provided for, this contract shall not be modified or supplemented except by the written agreement of both parties hereto.

"3. It is expressly agreed and understood that the second party, in the performance of this contract, shall fully comply with the Act of Congress, known as the Fair Labor Standards Act of 1938 (Wage and Hour Law) as amended.

"IN WITNESS WHEREOF the parties hereunto affix their signatures this the day and year first above written.

"E. L. BRUCE COMPANY

Frank M. McAlpine

"BY—————————————

" First Party

W. L. Kirby

" —————————————

" Second Party"

## ON SUGGESTION OF ERROR

PATTERSON, J.:

We have carefully considered the suggestion of error filed by the appellees, and have reached the conclusion that the Court did not err in its ruling upon the question of relationship of independent contractor, under the facts shown in this case, and it should be overruled. ■■ On the other hand, we have decided that the last paragraph of the opinion with reference to damages or

penalties should be considered by the Workmen's Compensation Commission, rather than fixed by this Court. We therefore alter the opinion so as to allow claimant total and permanent disability compensation and medical expenses. The case is remanded to the Commission for administration, including such interest and penalties, if any, as may appear to the Commission to be due under the Workmen's Compensation Law.

Opinion modified and suggestion of error overruled. All Justices concur.