235 So.2d 443 (1970)
J.A. BIGGART et al.
v.
TEXAS EASTERN TRANSMISSION CORP. and Brown & Root, Inc.
No. 45759.
Supreme Court of Mississippi.
April 27, 1970.
Rehearing Denied June 8, 1970.
Barnett, Montgomery, McClintock & Cunningham, Jackson, for appellants.
Daniel, Coker, Horton & Bell, Jackson, for appellees.
RODGERS, Justice:
This appeal is from the Circuit Court of the First Judicial District of Hinds County, Mississippi, involving a tort suit for the death of Jatt O. Biggart. On July 22, 1967, Texas Eastern Transmission Corporation (Texas Eastern) was doing excavation work on its gas pipeline ditch in Copiah County, Mississippi, through its contractors, Brown & Root, Inc., and River Construction Corporation. Brown & Root, Inc., was in charge of the engineering and construction as agent of Texas Eastern. River Construction Corporation was the pipeline contractor and had on its payroll the deceased. The pipeline had been laid in the ditch, but River Construction Corporation had failed to attach certain wires to the pipe, making it necessary to dig out the ditch again so these wires could be attached.
Mr. Jack Crum, employee of Texas Eastern, ordered Biggart into the ditch to shovel dirt from the pipe. The ditch was approximately seven (7) feet deep, nineteen (19) inches wide at the bottom and twenty-five *444 (25) inches at the top. Dirt was piled around the top of the ditch bank. The banks of the ditch caved in, burying Biggart and causing his death a few minutes later.
River Construction Corporation paid to the heirs of Biggart workmen's compensation benefits. A stipulation entered into by the parties shows that workmen's compensation coverage at the time of the accident was also carried by Texas Eastern and Brown & Root, Inc.
Suit was brought against Texas Eastern and Brown & Root, Inc., for Jatt O. Biggart's death on the theory that, as to him, these two companies were third parties; therefore, his heirs can sue for damages for his death even though his employer (River) had already paid workmen's compensation death benefits.
There was no jury trial. The circuit judge heard the matter on an agreed stipulation for the purpose of ruling on defendants' affirmative defense to the effect that River Construction Corporation was not an independent contractor; that the two defendants, Texas Eastern and Brown & Root, Inc., had the right to exercise control over deceased and over the details of the work, and thereby, he was their employee, since all three corporations carried workmen's compensation; that plaintiffs below would not have a right to sue these two defendants; that the sole remedy for Jatt O. Biggart's death is a workmen's compensation claim.
The lower court upheld defendants' affirmative plea and dismissed the case.
The only facts presented to the lower court, and the only facts properly before this Court, are those stipulated to by the parties, and they are set out in an appendix attached hereto.
Although there are many questions raised by appellants, the real issue in this case is whether or not Texas Eastern Transmission Corporation and Brown & Root, Inc., had authority to direct the activity of Jatt O. Biggart at the time Jack Crum ordered Mr. Biggart into the ditch. The answer to this question depends upon whether or not River Construction Corporation was an independent contractor.
The stipulated facts in this case show that the deceased, Jatt O. Biggart, was employed by River Construction Corporation and that River Construction Corporation (hereafter called River) was subject to the control of appellees, both as to the ultimate result and the detail work on the job. The stipulated facts show that River was not independent since Brown & Root, Inc., and Texas Eastern supervised, governed and controlled River's plan of work, course of work and details of work; therefore, River was the employee of appellees and River's employees were employees of appellees. Brown v. E.L. Bruce Co., Inc., et al., 253 Miss. 1, 175 So.2d 151 (1965). Cf. Renfroe v. Higgins Rack Coating & Manufacturing Co., 17 Mich. App. 259, 169 N.W.2d 326 (1969).
Although Jatt O. Biggart, deceased, was employed and paid by River, the engineer for Brown & Root, Inc., and the foreman for Texas Eastern were entitled to, and did exercise control over the employees of River.
The traditional test of the employer-employee relationship is the right of the employer to control the details of the work. Jatt O. Biggart was an employee of River and subject to the control of Texas Eastern and Brown & Root, Inc., appellees, at the time of his death. Brown v. E.L. Bruce Co., Inc., et al, 253 Miss. 1, 175 So.2d 151 (1965); Louis L. Gily & Sons v. Dependents of Shankle, 246 Miss. 384, 149 So.2d 480 (1963); Wade v. Traxler Gravel Co., 232 Miss. 592, 100 So.2d 103 (1958); Mozingo v. Mississippi Employment Security Commission, 224 Miss. 375, 80 So.2d 75 (1955).
*445 An employee may be employed by more than one employer while doing the same work. The fact that only one of the employers paid Biggart (here River Construction Corporation paid deceased) does not alter the fact that Biggart was in the service of Texas Eastern and Brown & Root, Inc., an employer-employee relationship between appellees and deceased Biggart based on the element of control present at the time. Boyd v. Crosby Lumber & Manufacturing Co., 250 Miss. 433, 166 So.2d 106 (1964); Meridian Taxicab Co., Inc. v. Ward, 184 Miss. 499, 186 So. 636 (1939); Texas Co. v. Mills, 171 Miss. 231, 156 So. 866 (1934); Cf. C.H. Leavell and Company and Peter Kiewit Sons' Company v. J.V. Doster, d/b/a Central Gulf Construction Co., 233 So.2d 775 (Miss., March 23, 1970).
Since Jatt O. Biggart, deceased, was an employee of Texas Eastern and Brown & Root, Inc., the exclusive remedy for his heirs and dependents is under the Mississippi Workmen's Compensation Act.
Section 6998-05, Mississippi Code 1942 Annotated (1952), provides as follows:
"§ 6998-05. Exclusiveness of liability.  The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this act, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."
In addition to the authorities cited above, the instant case is controlled by Stubbs v. Green Brothers Gravel Co., Inc., 206 So.2d 323 (Miss. 1968), and Robertson v. Stroup, 254 Miss. 118, 180 So.2d 617 (1965).
The facts in Robertson v. Stroup, supra, closely parallel the facts in the case at bar. In the Robertson case, one Stroup had obtained a license from Hertz Company to operate a rental car business in several Mississippi cities. Stroup then employed one James to operate the rental car business in one city, and compensated James by paying him ten percent (10%) of the gross receipts. At the time of his employment by Stroup, James also was the operator of a service station. In the operation of this service station, James used four employees, including one Robertson. Further facts found at page 618 of this case are as follows:
"* * * These employees performed services at the filling station and also performed services in the rental car business. They were hired by James and paid by him. Under the arrangement with Stroup, James kept the records for the rental car business and rented cars at his filling station. He also maintained an office at the Columbus airport, where cars were kept and rented. James maintained a telephone at the filling station for the rental car business with a direct line to the airport office. Ray Stokes worked at the airport. He performed no services in connection with the filling station. He was employed by James on behalf of Stroup and was paid by Stroup. His work was performed under the supervision of James. Robertson worked at night, and during the course of his work he at times rented cars, checked in cars that had been rented by someone else, and at times would deliver a car to the airport when one was needed. On the *446 night he was injured he was directed by James to drive a rental car to the airport and deliver it to Stokes. Stokes was to return him to the filling station in a car kept at the airport for this purpose. Instead of returning in the car belonging to Stroup, Stokes drove his own car, and on the way back to the filling station he lost control of his car and had the accident in which Robertson was injured."
The question in the Robertson case, as narrowly defined, was simply whether Robertson, at the time of his injury, was the employee of Stroup. If so, the payment of workmen's compensation by Stroup's agent, James, would bar him from maintaining a suit against Stroup for the same injury. This is the precise question that is presented before this Court in the case at bar.
It is noted in the Robertson case that it came on appeal from a hearing on a plea in bar prior to the trial of the case on its merits. The plea in bar alleged that Robertson was, at the time of the injury, an employee of Stroup's agent, Bill James, doing business as James' Gulf Service Station, and that James was the agent of Stroup in the operation of his rental car business, and, at the time of the injury, Robertson was an employee of James engaged in the furtherance of the rental car business, thus making him an employee of Stroup. Stated another way, the effect of the plea was to contend that at the time of the injury Robertson was an employee of Stroup, and as a result, Robertson had been paid workmen's compensation, and therefore Stroup was not "any other party" within the terms of the workmen's compensation law.
An identical plea is set forth as an affirmative defense in the case at bar. It has been contended that at the time of his death Jatt O. Biggart was, in fact, an employee of Texas Eastern and Brown & Root, Inc., thus making the workmen's compensation law the exclusive remedy of the plaintiff.
Under the authority in the Robertson case, the fact that Texas Eastern and Brown & Root, Inc., and Jatt O. Biggart, deceased, had not entered into a formal employer-employee relationship did not affect the fact that such a relationship did exist. Jatt O. Biggart had acknowledged the implied relationship by accepting and obeying the orders and directions of Texas Eastern and Brown & Root, Inc., personnel and Texas Eastern and Brown & Root, Inc., had asserted such relationship by issuing such directions and orders and insisting they be obeyed. There can be little doubt in this case that if Jatt O. Biggart were claiming workmen's compensation benefits against Texas Eastern and Brown & Root, Inc., this Court would find that Biggart was an employee of the two companies. Such was the case in Robertson v. Stroup, supra. Yet, in Robertson, as in the instant case, suit was not maintained for workmen's compensation benefits, but was maintained at common law.
In the recent case of Stubbs v. Green Brothers Gravel Co., Inc., 206 So.2d 323 (Miss. 1968), a truck driver, in the employment of a truck owner, was injured by another truck owned by the gravel pit owner who had an oral contract with the truck owner. The truck driver was paid compensation by the truck owner and filed a common law action against the gravel pit owner. It was pointed out in that case that, under the compensation law, the injured truck driver could have successfully maintained a compensation claim against the gravel pit owner because his immediate employer, the truck owner, was not a truly independent contractor. The lower court sustained a plea that the action was barred by the workmen's compensation law, even though both the truck owner and the pit owner carried workmen's compensation insurance, and the case was affirmed on appeal, this Court saying:
"The instant case is controlled by Brown v. E.L. Bruce Company, 253 Miss. 1, 175 So.2d 151 (1965); Boyd v. Crosby Lumber and Manufacturing Company, *447 250 Miss. 433, 166 So.2d 106 (1964); Bush v. Dependents of Byrd, 234 Miss. 782, 108 So.2d 211 (1959), and Wade v. Traxler Gravel Company, 232 Miss. 592, 100 So.2d 103 (1958). The above stated arrangement establish[es (sic)] an employer-employee status for compensation purposes. * * *
"This case is what Larson calls an `upside-down compensation case,' in the form of a negligence action in which the employee is trying to get out from compensation coverage to escape the exclusive provisions of the act, and the employer is asserting compensation coverage. 1 Larson, Workmen's Compensation Law § 26.10, at 452.11 (1965). Reason and consistency require that we apply the provisions of the act and the decisions interpreting it with an equal hand, both where coverage is asserted and where the exclusive remedy provisions of the statute are involved. * * *
"In summary, the circuit court was correct in dismissing this tort action, because appellant's exclusive remedy is under the Workmen's Compensation Act." (206 So.2d at 324, 325)
So it is in this case, it having been stipulated that the deceased workman was employed by River Construction Corporation, and that River was subject to the control of appellees, both as to the ultimate result and the working details of the job. The deceased workman, Jatt O. Biggart, became an employee of the appellees, and for that reason, the judgment of the lower court should be affirmed.
Affirmed.
GILLESPIE, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.

APPENDIX
"1. That this stipulation is for the sole purpose of a ruling on the first affirmative defense set up in the answer of the defendants, and that this stipulation will constitute the entire record as to said first affirmative defense.
"2. That both parties request a ruling in advance of the trial by the Court sitting without jury on said first affirmative defense as set forth in the answer heretofore filed by the defendants.
"3. That this stipulation of facts is agreed to solely for the purpose of such ruling on said first affirmative defense set up in the answer of the defendants, and that this stipulation may not be used for any other purpose and will not be admissible at any trial on the merits either as evidence or for purposes of impeachment, or for any other reason, and that the only use to which this stipulation is to be made is to constitute a record for the purposes of a ruling on the aforesaid first affirmative defense set up by the defendants.
"4. That in 1967, the defendant, Texas Eastern Transmission Corporation, was contemplating the construction of certain pipelines described in documents issued by it, including several projects in Mississippi. That the defendant, Texas Eastern Transmission Corporation, entered into a contract with the defendant, Brown and Root, Inc., whereby Brown and Root would perform the `engineering and construction services' for such projects and act as the agent of the defendant, Texas Eastern, in obtaining a contract with a pipeline contractor. That on April 6, 1967, a contract was entered into by and between Texas Eastern Transmission Corporation, whereby River Construction Corporation became the pipeline contractor for the actual performance of the work.
"5. That on and prior to July 22, 1967, the defendant, Texas Eastern Transmission Corporation, owned an underground gas pipeline in Copiah County, Mississippi, which had been laid in a ditch approximately seven feet deep, nineteen inches wide at the bottom, and twenty-five inches wide at the top. Electrolysis wires were to be attached *448 to the pipe, but River Construction Corporation had inadvertently refilled the ditch without attaching the wires and on said date River Construction Corporation was in the process of uncovering the pipe in order to attach the wires. A back-hoe machine was being used for that purpose, but it became disabled. Jatt O. Biggart had been employed by River Construction Corporation and was ordered into the ditch to shovel dirt from the pipe. While he was in the ditch the banks caved in burying him to his neck and causing his death.
"6. That although Jatt O. Biggart, deceased, was employed by River Construction Corporation, the engineer for Brown and Root and the foreman for Texas Eastern were entitled to and did exercise control over Biggart and other employees of River Construction Company; that River Construction Company could not do any work on the pipeline without the specific authority of the engineer of Brown and Root and River Construction Company and its employees were supervised both by the engineer of Brown and Root and the foreman of Texas Eastern, [either of whom could fire the employees of River Construction (sic)] Company and could order them about in the course of their work, and that at the time of his death Jatt O. Biggart, deceased, had been ordered into the ditch by a foreman of Texas Eastern and was using Texas Eastern's shovel; that Brown and Root and Texas Eastern exercised control over River Construction Company and its employees and were exercising supervision and control over the work and the deceased and other employees of River Construction Company working in the ditch at the time of the aforesaid accident and were exercising supervision and control over the entire project.
"7. Jatt O. Biggart was an employee of River Construction Corporation at the time of his death and was paid for his labor by River Construction Corporation. He had been hired by River Construction Corporation prior to July 22, 1967. The relationship of employer and employee existed between River Construction Corporation and Jatt O. Biggart at the time of his death.
"8. On July 21, 1967, Jack Crum, a Texas Eastern employee, was driving a welding truck at about the site of the accident which later took the life of Jatt O. Biggart. Jack Crum got a welding rod off the truck and told Henry Joseph Lovorn, who was working with Jatt O. Biggart, and also an employee of River Construction Corporation to punch for the pipe in a ditch to see how close the back-hoe machine was getting to the pipe. Henry Joseph Lovorn had to take orders from Texas Eastern employees, and Jack Crum, the Texas Eastern employee, was directing Jatt O. Biggart what to do. Jack Crum was on the site every day that work was going on, and he gave directions to all of the River Construction Corporation employees.
"9. Texas Eastern drew the plans and specifications for the pipeline, and River Construction Corporation had to lay the line just as Texas Eastern told them to do.
"10. Brown and Root carried out inspections on the pipeline. If the Brown and Root employees did not think the work was good enough to meet specifications, they would inform the River Construction Corporation employees, and River Construction employees had to come back and do the work over.
"11. In the event the back-hoe machine had struck the pipe, Jack Crum, the Texas Eastern employee, was supposed to have called in and told a higher headquarters representative to shut the gas off of the pipe. On July 22, 1967, Jack Crum told Jatt O. Biggart and another boy to get [in (sic)] the ditch and clean off the pipe. While G.C. Choate, the foreman for River Construction Corporation on this particular job, was gone to town after oil for the *449 back-hoe machine on July 22, 1967, Jack Crum told Jatt O. Biggart and Wayne Flynn to jump down in the ditch and clean it out. Jack Crum later admitted placing these boys in the ditch, and Jimmy (sic) Joseph Lovorn was a witness at the time of the admission, and heard Jack Crum make this admission. Willie Bell, a half-brother to J.A. Biggart, the father of Jatt O. Biggart, also heard Jack Crum admit that he had placed Jat O. Biggart and Wayne Flynn in the ditch a short time before Jatt O. Biggart was killed. Jack Crum had the right to give these orders on behalf of Texas Eastern and control Jatt O. Biggart as to details of the work.
"12. On the day prior to the death of Jatt O. Biggart, the ditch had caved in, and shovels belonging to Texas Eastern were used to clean the ditch out.
"13. The purpose of the digging at the time of the death of Jatt O. Biggart was to replace an electric wire which had been left off the pipeline by River Construction Corporation at the time when the pipe was laid and the ditch was filled in. James A. Champion, a Texas Eastern employee, ordered the River employees to uncover the pipe and put the wire on, after Joe W. Davis, a Brown and Root employee, discovered that the wire had been left off.
"14. The ditch which caved in and caused the death of Jatt O. Biggart was approximately twenty-five inches at the top and nineteen inches wide at the bottom. Loose dirt was piled up on the banks. The ground was somewhat wet from previous rains.
"Plaintiff's testimony will show that the ditch in question should have been not less than 40" in width at the top instead of 25" in width at the top. That it was more likely to cave in under all the circumstances existing because of its narrowness at the top and heavy wet dirt on each side of the ditch. In other words, plaintiff's proof will show that by reason of the narrowness of the top of the ditch and large quantities of dirt on each side of the ditch and the dampness of the soil the ditch caved in on Jatt O. Biggart, smothering him and breaking certain bones in his body and causing his death. That since the ditch had caved in the day before Jatt O. Biggart was killed, the defendants should have braced the sides of the ditch in such a way that it would not cave in again; that the caving in of the ditch the day before was notice that it was highly dangerous for anyone to work in the ditch and that in view of the fact that defendants knew it had caved in the day before was notice to the defendants that the ditch should have been wider and braced so that it would not cave in the second time. That since the ditch had caved in prior to the death of Jatt O. Biggart, the defendants should have had sufficient manpower and machinery at the site to have dug Jatt O. Biggart out of the ditch after it did actually cave in and caused his death. That if defendants had provided sufficient manpower and machinery to have immediately dug Jatt O. Biggart out after the cave in it would have saved his life. That defendants had the right to require the ditch to be dug wider at the top and to have had sufficient manpower and machinery available at the site and to require large and heavy wet dirt to be removed.
"15. River Construction Corporation could not have started construction on the pipeline job without the approval of a Brown and Root employee. A Brown and Root employee advised Mississippi State Highway Commission and the contractor when the construction work was ready to begin. As the work progresses, if the ditch gets too far ahead of the pipe, Brown and Root can stop the contractor from going ahead with the ditch. Joe Davis, a Brown and Root employee, could forbid the contractor to lay pipe at night. Mr. Davis as engineer for Brown and Root and Texas Eastern had the right to and did, in fact, *450 direct and control the immediate movements and activities as to the details of the work being done by River Construction Corporation and its employees. Mr. Davis had on occasions previous to July 22, 1967, told River Construction employees to get out of the ditch because it was dangerous. Mr. Davis, of Brown and Root and Mr. Champion or Mr. Crum of Texas Eastern [could fire employees of River Construction Corporation (sic)].
"16. River Construction Corporation was required by Texas Eastern and Brown and Root to carry Workmen's Compensation insurance and the dependents of Jatt O. Biggart filed a Mississippi Workmen's Compensation claim against River Construction Corporation, and the matter was settled with the employer River Construction Corporation and its insurance carrier by paying benefits totaling $8,000.00 to the claimants. The dependents of Jatt O. Biggart were represented before the Mississippi Workmen's Compensation Commission by the law firm of Barnett, Montgomery, McClintock and Cunningham.
"17. As of July 22, 1967, both Texas Eastern Transmission Corporation and Brown and Root, Inc., defendants herein, had in effect valid existing policies of workmen's compensation insurance which are on file and of record with the Mississippi Workmen's Compensation Commission. That the facts on the question of the right of control and exercise of control by Brown and Root's engineer and Texas Eastern's foreman over the employees of River Construction Company are in dispute, but are admitted for the purpose of argument solely in order that the affirmative defense set up by both defendants in their first affirmative defense may be disposed of as hereinabove set forth, the defendants herein having stipulated to such fact for that purpose and no other.
"Stipulated to, approved and agreed to."