**Andrew Jake MLADINICH, d/b/a The Fiesta, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 4335(R) renumbered 72S–1(R) and 72S–282(R).**

United States District Court, S. D. Mississipi, S. D.

Aug. 12, 1974.

Bobby G. O'Barr, Biloxi, Miss., for plaintiffs.

Robert E. Hauberg, U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., Scott P. Crampton, Asst. Atty. Gen., John F. Murray, Leonard D. Van Slyke, Jr., Attys., Dept. of Justice, Washington, D. C., for defendant.

OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Plaintiffs in the above styled cases seek to obtain a refund of Federal Withholding, Federal Insurance Contributions Act and Federal Unemployment Act taxes in the total amount of $6,299.-05, plus statutory interest, paid to the District Director of Internal Revenue Service for the four quarters of 1966.

The consolidated actions were tried to the Court on depositions and live testimony, following which the parties supplied the Court with well prepared briefs.

The sole issue before the Court is whether go-go girls hired by plaintiffs to dance at plaintiffs' night club, The Fiesta, Biloxi, Mississippi, were employees within the meaning of the Internal Revenue Code of 1954, thereby rendering plaintiffs liable for the withholding income taxes as well as taxes under the Federal Insurance Contributions Act and the Federal Unemployment Tax Act, or whether these dancers were independent contractors as claimed by plaintiffs. The applicable provisions of the Internal Revenue Code are: FICA, Sections 3101 through 3125; FUTA, Sections 3301 through 3311; and withholding, Sections 3401 and 3402. Under these sections an "employee" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee. Treasury Regulations, 26 C.F.R., Section 31.-3121(d)–1(3), provides that if the relationship of employer and employee exists, the designation of description of the relationship by the parties as anything other than that of employer and employee is immaterial.

Prior to and during the early part of 1966, as stipulated by the parties, Andrew Jake Mladinich, his brother and his father's estate, operated several establishments in Biloxi, including The Fiesta, a night club offering mixed drinks, bands for dancing and go-go girls. In the latter part of 1966, Jake Mladinich assumed sole proprietorship. In his deposition, Mladinich reviewed the operation of the club prior to the acquisition of the go-go girls and during the tax year involved. The club opened at 1:00 p. m. daily, remaining open until 3:00 or 4:00 a. m. Regular employees included day and night bartenders, some seven to eight cocktail waitresses, a doorman, a cashier, a maintenance man and a janitor. These employees were paid every two weeks, punched in and out on a time clock, were subject to daily instruction, participated in hospitalization benefits, bonuses at Christmas time, and were at all times subject to the direct supervision and control of Mladinich. In addition to these regular employees, who are not involved herein, Mladinich hired two bands, one a hotel society type band composed of union members, and a rock and roll band. These bands alternated, each playing 30 minutes at a time, starting at 8:00 p. m. daily. The bands were generally engaged through union or other agencies, and no claim is made by the government that they were employees of the plaintiffs. Prior to 1966, plaintiffs regularly employed other entertainment accompanied by the band, such as singers and dancers. These, too, were generally hired by plaintiffs through agencies, much in the manner of the vaudeville entertainers excluded as employees in Radio City Music Hall Corporation v. United States, 2 Cir., 135 F.2d 715. The government has assessed no tax as to them.

Early in 1966, when go-go dancers became popular, Mladinich testified that he began to hire them as necessary to the success of his club. He started with three and at subsequent times during the year had as many as eight or more. He found it less expensive to hire these girls locally than the cost of securing out-of-state professional dancers through agencies. Some of the girls were natives of Biloxi, whom Mladinich knew. Others he drew from night clubs in the area, or who had danced in clubs in other states, and who had drifted into Biloxi because of boy friends or husbands stationed at Keesler Air Force Base located at Biloxi. He conducted auditions for those he thought necessary. He hired these girls for the first week, either orally or by written contract, with what he called an option to continue from week to week, or for the dancer or himself to consider the employment at an end. The girls were paid by the week for a six day week,

with deductions made for absenteeism. Although they did not punch a time clock, they were checked in and out by the cashier. Their hours were the same as those of the rock and roll band, the girls being expected to rotate so that there was dancing every time the rock and roll band played. Mladinich furnished their costumes except for boots and hosiery, and furnished them a dressing room and a seamstress for costume repairs. He furnished the stage, the tables on which they danced and the floodlights. Although Mladinich denied having the right to fire these girls (he called it non-renewing their contract), the girls did look to him as the boss. Most all had taken private dancing lessons at some time or other in their lives, but none were professional dancers and none had agents who handled their contracts. Nor did the girls have a leader or supervisor. Each girl dealt separately with Mladinich.

Although all club records were destroyed on August 17, 1969 by Hurricane Camille, Mladinich identified a copy of a 1971 "Contract for Entertainers" which he said was similar to those used in 1966 in which each go-go dancer was informed that, as a professional entertainer and due to Mladinich's limited control, she was an independent contractor and expected to be responsible for her own F.I.C.A. and federal withholding taxes. He otherwise denied their status as employees by stating that he had no control over their routines or in the manner in which they danced, their individual style of dancing being each girl's art. He exercised no control over the times when they were not dancing. They were not required to socialize with guests, promote the purchase of drinks or hustle quarters for the jukebox. Some often danced for conventions at various hotels in Biloxi, being paid by the conventions. Mladinich did not forbid them to do so. Unlike regular employees of the club, such as bartenders and cocktail waitresses, the go-go dancers were paid no bonuses, received no paid vacation time, and were not covered by any insurance program such as group hospitalization or workmen's compensation.

Although all cases dealing with the employer-employee relationship vis-a-vis that of an independent contractor hold that each case must be decided on its particular circumstances, there are certain criteria recognized as useful in determining the relationship, with the factor of control being of basic importance. The Mississippi Supreme Court in Brown v. E. L. Bruce Company, 253 Miss. 1, 175 So.2d 151, cited from 27 Am.Jur., "Independent Contractors", Section 6 at page 486: "In determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Whether one is an independent contractor depends upon the extent to which he is, in fact, independent in performing the work. Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." The Court stated that the rule thus cited has been repeatedly sanctioned as the law in Mississippi.

Both parties have cited and rely on their respective interpretations of Radio City Music Hall Corporation v. United States, 2 Cir., 135 F.2d 715; T. L. Squared, Inc. v. United States, 74–1 U. S.T.C., par. 9260, January 17, 1974; and Filipidis et al. v. United States, 27 AFTR2d 71–592, December 29, 1970. In *Radio City*, the theatre exhibited motion pictures as well as a live stage show. The stage show was performed by two kinds of actors, a band, a glee club and a corps de ballet concededly being theatre employees, and the others who performed various kinds of vaudeville acts. The issue was whether the persons employed in the vaudeville acts were employees or independent contractors. As the Court found they were independent contractors, plaintiffs here liken the go-go dancers to the vaudevillians; the government likens them to the corps de ballet. In *T. L. Squared*, a U. S. Dis-

trict Court in Ohio adopted the tests set out in *Filipidis,* decided by a U. S. District Court in Maryland, which in turn relied on language in Keitz v. National Paving & Contracting Co., 214 Md. 479, 134 A.2d 296, 136 A.2d 229 thusly:

"Coming now to the main question involved herein, it has been stated by this Court that there are at least five criteria that may be considered in determining the question whether the relationship of master and servant exists. These are: (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer. Standing alone, none of these indicia, excepting (4), seem controlling in the determination as to whether such relationship exists. The decisive test in determining whether the relation of master and servant exists is whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done. It will be noted from the above, it is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his right to do so that is important."

Mladinich claims that he had no right, nor did he attempt, to control or direct the go-go girls in their dance routines or instruct them in any manner in the way they danced. This smacks of speciousness—the Court does not assume that he was a ballet master or dance instructor in order to be their employer. He alone interviewed, auditioned and hired the dancers. He, through the band, scheduled their times to dance. He paid their salaries. He furnished the costumes and the "cages" in which to dance. He deducted from their pay when absent. His permission was obtained when any dancers performed for conventions away from The Fiesta. Despite his denial that he had ever fired any of the dancers, he had a right to terminate her services, at least at the end of any week. Admittedly he thought they were essential to his business of operating a night club. He may have in good faith tried to cloak the dancers in 1966 with the attributes of the professional entertainers whom he had earlier hired, but the differences are manifest.

The Court finds that the aforesaid 1966 taxes were correctly assessed and collected; that plaintiffs are not entitled to a refund, and that these consolidated cases should be dismissed.

Attorneys for the government are directed to submit an appropriate order with Court costs taxed to the plaintiffs.